UNITED STATES DISTRICT COURT2323712
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 23-cv-23712

JANE DOE,

    Plaintiff,

v.

CITY OF MIAMI, FLORIDA, a municipal corporation,
JOHANNA GARCIA, individually,
SHRIEFF SWAN, individually,
RUBEN GONZALEZ, individually,

    Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS [ECF 39]**

Plaintiff responds in opposition to Defendants' Joint to Dismiss Plaintiff's Amended Complaint [ECF 39] and states:

**CLAIMS**

The following are the counts in the amended complaint.

| COUNT | CLAIM | DEFENDANT |
|---|---|---|
| 1 | Battery | City |
| 2 | Section 901.211 Claim | City |
| 3 | Negligent Infliction of Emotional Distress | City |
| 4. | Intentional Infliction of Emotional Distress | All Officers |
| 5 | Section 1983 Unlawful Search Claim | All Officers |
| 6 | Battery | Garcia Only |
| 7 | Section 901.211 Claim | All Officers |

1

Plaintiff will address each of the defendants' arguments *ad seriatim* in the order presented by the defendants.

## THE AMENDED COMPLAINT STATES A CAUSE OF ACTION

The Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) performs the same function as the old general demurrer, in that it admits the well pleaded material allegations of the Complaint, *Hospital Building Company v. Trustees of the Rex Hospital,* 425 U.S. 738 (1976); *Kugler v. Helfant,* 421 U.S. 117, 125 (1975), but denies their legal sufficiency. Consequently, the motion will not be granted unless it appears to a certainty that a plaintiff is entitled to no relief under any statement of facts which could be proved in support of the claim. *Haines v. Kerner,* 404 U.S. 519 (1972); *Watts v. Graves,* 668 F.2d 721 (3rd Cir. 1981). Dismissal is improper where the material allegations of Plaintiff's Complaint, viewed in their most favorable light, are legally sufficient to establish a claim.

A classic formulation of the test often applied to determine the sufficiency of the complaint was set out by the Supreme Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), wherein the Court stated:

> ... In appraising the sufficiency of the complaint we follow … the accepted rule that a Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

A motion to dismiss will not be granted unless it appears to a certainty that a plaintiff is entitled to no relief under any statement of facts which could be proved in support of the claim. *See, Robertson v. Johnston,* 376 F.2d 43 (5th Cir. 1967). No such certainty exists in this case.

A.     Sovereign Immunity

Defendant City asserts that it is entitled to sovereign immunity pursuant to Section 768.28 (9) . This is incorrect for the reasons stated below. The City's motion should be denied

> Section 768.28(9)(a), Florida Statutes (1989), provides that Florida's waiver of sovereign immunity does not apply to, and governmental employees may be personally liable for, acts beyond the scope of their duties, committed in bad faith or with malicious purpose, or that exhibited wanton and wilful disregard of human rights, safety, or property. This exception to the waiver must be read *in pari materia* with the general waiver statute, which states simply that the governmental agency is liable for the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant. § 768.28(1), Fla. Stat. (1989).

*McGhee v. Volusia County*. 679 So.2d 729, 730(Fla. 1996).

Based on decisional law, Florida courts have determined that the law does not support the City's argument. First, the City claims by the language in the amended complaint "require[s] this Court to find that the officer acted 'maliciously,' with 'bad faith,'" or in a manner exhibiting 'wanton and willful disregard of [Plaintiff's] human rights, safety, or property' [ECF no. 30 ¶¶ 67, 71]" ECF 39 at 2-3. This is totally incorrect, fallacious and disingenuous. There is nothing in those cited paragraphs, nor in ECF 30 at ¶¶ 34, 38-43, 57, 69 where Plaintiff alleges that the conduct was committed in those stated manners.[1]

---

[1] The following language used in the amended complaint and cited by the City does NOT allege malice, bad faith, nor willful and wanton behavior."

(1) Officer Garcia, without authorization from a supervisor, conducted an "invasive, unsanitary, and humiliating" strip and cavity search of Plaintiff, with unsanitary gloves, in an adjacent public alley with "dirt, debris, bugs, vermin, and garbage"; (2) all Officers "knew that conducting a strip search in public without a supervising officer's written authorization was in violation of law and the standard operating procedures of the Department" and was "completely improper"; and (3) "[t]he strip search and body cavity search conducted was demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, and signifying

      In *Hennagan v. Department of Highway Safety & Motor Vehicles*, 467 So.2d 748 (Fla. 1ˢᵗ DCA 1985), the court confronted a situation in which a Highway Patrol officer allegedly had "arrested" a minor child pretextually so that he later could sexually molest her. The trial court dismissed the complaint against the department on grounds the officer had exceeded the scope of his employment, thereby rendering the department immune. The district court reversed on the following rationale:

> Conduct is within the scope of employment if it occurs substantially within authorized time and space limits, and it is activated at least in part by a purpose to serve the master. The purpose of the employee's act, rather than the method of performance thereof, is said to be the important consideration. *Id.* at 751. We agree that this analysis would be equally true under the law as it exists today. The officer's misconduct, though illegal, clearly was accomplished through an abuse of power lawfully vested in the officer, not an unlawful usurpation of power the officer did not rightfully possess.

      A second case is *Richardson v. City of Pompano Beach*, 511 So.2d 1121 (Fla. 4ᵗʰ DCA 1987), *review denied*, 519 So.2d 986 (Fla.1988). There the court confronted a situation in which a city police officer allegedly used excessive force in committing a false arrest. Like *Hennagan*, the court concluded that earlier principles defining the "scope of employment" test remained good law. Applying them to the case, the *Richardson* court concluded that acts did not fall beyond the scope of the officer's employment merely because they were intentional. Instead, the employing agency could assume liability in that situation, and summary dismissal was not proper. *Id.* at 1123-24. Once again this showed a case of lawful power abused, not of an unlawful usurpation of authority.

*McGhee* at 731-32

      Here, [Officer Garcia] clearly had the lawful authority to restrain arrestees, detain them, [conduct a search of their persons] or even respond with force in appropriate situations. Her office gave her that authority, and [s]he therefore cannot be described as a usurper. The fact that Garcia may have intentionally abused her office does not in itself shield the [City] from liability. In sum, the question must be put to the fact-finder whether [Officer Garcia] acted in bad faith, with malicious

---

degradation." [ECF No. 30 at ¶¶ 34, 38-43, 57, 69.]

ECF 39 at 2-3

> purpose, or in a manner exhibiting wanton or wilful disregard of human rights, safety, or property.

*McGhee* at 733

Here, the search of Plaintiff incident to arrest which included the digital penetration was conduct within the scope of employment as it occurred substantially within authorized time and space limits, and it is activated at least in part by a purpose to serve the master. The purpose of the employee's act, rather than the method of performance thereof, is said to be the important consideration.

> As this statute providing for governmental immunity in certain situations has evolved, it appears the governmental entity is liable for all torts, negligent ones and intentional ones alike, unless they are committed outside the course and scope of one's employment or unless the actor was acting in bad faith or with a malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
>
> …
>
> Intentional torts are within the pale of governmental immunity because it equates the word "intentional" with the words "wanton and willful." We believe that the juxtaposition of the latter words with the remainder of the phrase "wanton and willful disregard" connotes conduct much more reprehensible and unacceptable than mere intentional conduct.

*Richardson* at 1123

It is premature to decide this issue of immunity at this stage of the proceedings. It is a question which should be made by the fact-finder, *i.e.,* the jury.

> The fact that [Garcia] may have intentionally abused her office does not in itself shield the City from liability. In sum, <u>the question must be put to the fact-finder</u> whether Garcia acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or wilful disregard of human rights, safety, or property.

5

*McGhee* at 733 (e*mphasis* supplied).*See also*, *Vasquez v. City of Miami Beach*, 895 F.Supp.3d (S.D. Fla. 2012} (the Florida Supreme Court held that the issue of whether the employee acted in bad faith or with malicious purpose should be left to a fact-finder.)

> The issue of the scope of employment should not be decided at the pleading stage when the facts do not 'inherently or necessarily involve those elements which would activate immunity.'" *Richardson* at 1124. "[T]he question must be put to the fact-finder whether [the deputy] acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or wilful [sic] disregard of human rights, safety, or property."

*Volp v. Sasser,* 3:18-cv-689-TJC-JRK (M.D. Fla. November 3, 2020).

"As Florida's Supreme Court has explained, the employing agency is immune as a matter of law only if the acts are so extreme as to constitute a clearly unlawful usurpation of authority the [officer] does not rightfully possess or if there is not even a pretense of lawful right in the performance of the acts.' *Taylor v. Wagner*, Case No. 8:20-cv-687-CEH-SPF. (M.D. Fla July 12, 2021). Here the officer had the authority, at all times, to conduct a search of the plaintiff.

For the reasons stated, the motion of the City should be denied.

B.  Negligent Infliction of Emotional Distress

By separate notice, Plaintiff is dismissing Count 3.

C.  Section 901,211 Claims

Plaintiff alleges claims for a violation of section 901.211, Florida Statutes, in Counts 2 and 7 of her amended complaint. Defendants argue that section 901.211 does not establish an independent cause of action and request dismissal. For the reasons stated below, plaintiff asserts that

6

section 901.211 establishes an independent cause of action and the motion of the defendants should be denied

Florida has held that section 901.211 does create an independent cause of action. *Welch v. Rice*, 636 So.2d 172 (Fla. 2nd DCA 1994). There, appellant Welch filed a complaint against the defendant Sheriff alleging that she had been unlawfully strip searched in violation of section 901.211, The trial court granted summary judgment for Welch. The appellate court reversed and remanded the case back to the lower court for further proceedings, thus holding, a fortiori, that an independent cause of action exists for a violation of section 901.211.

In support of their argument, Defendants cite to three cases: *Forty One Yellow, LLC v. Escalona*, 305 So.3d 782 (Fla. 2nd DCA 2020), *In Int. of J.M.Z.*, 635 So.2d 134 (Fla. 1st DCA 1994), and *Kastritis v. City of Daytona Shores*, 835 F.Supp2d 1200 (M.D. Fla 2011). Each, unlike *Welch,* do not hold that section 901.211 does not create an independent cause of action.

First, both *Forty One Yellow* and J.M.Z. should have been cited by the use of cf. Neither case is directly on point. Each concern other statutes where the appellate courts did not find an independent cause of action for other statutes. Defendants argue by analogy that section 901.211 does not create an independent cause of action because a totally different law did not possess an independent cause of action.

Further, *Kastritis* is also not on point. It does not hold that section 901.211 does not create a cause of action; it holds that 901.211 is not relevant in a section 1983 lawsuit as the standards in the statute exceed the constitutional standard.

Thus, the Defendants' request that Counts 2 and 7 be dismissed should be denied.

D,   The Officers' Motion to Dismiss[2]

Garcia moves to dismiss counts 4, 5 and 7 because she argues that those counts amount to "shotgun" pleadings. Because of the dismissals of her codefendants that argument is now moot.

Garcia also argues that Plaintiff failed to allege that the invasive *qua* digitally penetrating search was insufficiently pled because the amended complaint fails to state the search offended the Fourth Amendment.[3] As shown below, the quoted sections from the amended complaint show that plaintiff has alleged the Fourth Amendment multiple times. (Emphasis supplied).

> 48.   GARCIA searched PLAINTIFF'S buttocks then said, "I'm really sorry if this makes you feel uncomfortable, but I have to, I have to search you unless you want to tell me something."
> 49.   GARCIA also searched PLAINTIFF'S external vaginal area. She, then searched the interior of PLAINTIFF'S vagina, using GARCIA'S fingers to digitally penetrate PLAINTIFF'S vagina with her unsanitary gloves. The search was recorded by GARCIA'S body worn camera.
> 50.   As GARCIA began the strip and body cavity search of the PLAINTIFF, PLAINTIFF began to cry and protest the invasive and illegal search by GARCIA.
> 51.   GARCIA asked PLAINTIFF why she was crying. PLAINTIFF responded, "Why you doing it outside" referring to in public. PLAINTIFF then added referring to a search by a police officer, "I never had anyone search me like that on my c__chie and stuff!"
> 52.   GARCIA replied, "Yeah, but if the officers saw you put something somewhere, I have to search." GARCIA then added, "If you want to tell me something so I don't have to go in through anywhere."
> 53.   GARCIA then told the complainant she was going to search her one more time and said she's sorry if it's uncomfortable, saying, "from the front again, I'm sorry." GARCIA then searched PLAINTIFF'S vaginal area a second time, digitally penetrating her vagina again.
> …

---

[2] By separate notice, Plaintiff is dismissing the case against Defendants Swan and Gonzalez in Counts 4, 5 and 7. Garcia remains a defendant

[3]   "If an invasive search is justified (sic), then plaintiff must properly allege the invasive search offended the Fourth amendment." Plaintiff believes that Garcia meant to write UNjustified. ECF 39 at 13, second paragraph.

> 64. At all times material hereto, while PLAINTIFF was in the custody, care, and control Defendants GARCIA, SWAN, and GONZALEZ, she had the constitutional rights to be free from the deprivation of her liberty without due process of law, including the right to personal security and bodily integrity, and to be free from unreasonable searches pursuant to the **Fourth and Fourteenth Amendments**.
>
> …
>
> 68. At all times, PLAINTIFF enjoyed a reasonable expectation of privacy in the areas of her body that were searched including her breasts, the external areas of her vagina and the internal areas of her vagina.
>
> 69. The strip search and body cavity search conducted was demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, and signifying degradation.
>
> 70. The strip search and body cavity search which included the digital penetration of PLAINTIFF's vagina was unreasonable based upon, among other reasons, the manner it was conducted, the physical location where it was conducted, the lack of privacy, and the claimed justification for the intrusive digital penetration.
>
> 71. The claimed justification was that the officers believed that PLAINTIFF may have secreted contraband in her body parts because of suspicious movements but there was nothing of clarity or sufficiency to establish a reasonable suspicion.
>
> 72. PLAINTIFF'S constitutional rights to be free from unreasonable searches pursuant to the **Fourth and Fourteenth Amendments** were violated.
>
> …
>
> 98. The strip search and body cavity search of DEFENDANTS GONZALEZ, SWAN and GARCIA of PLAINTIFF were done without any legal right and authority, and was unreasonable and violated PLAINTIFF'S constitutional rights to be free from unreasonable searches pursuant to the Fourth and Fourteenth Amendments.
>
> 99. PLAINTIFF'S constitutional rights to be free from unreasonable searches pursuant to the **Fourth and Fourteenth Amendments** were violated and constitute an unlawful search of the PLAINTIFF in violation of her **Fourth Amendment** rights within the meaning of 42 U.S.C. § 1983.

Additionally, defendant Garciamakes the assertion "[t]he search incident to arrest may be invasive including a reach-in-search. [*United States v. Robinson,* 414 U.S. 228, 235 (1973); *See Terry v.. Ohio,* 392 U.S. 1, 26-27(1968); *Jenkins,* 978 So.2d 127." ECF 39 at 13. However, there is nothing in those cases which indicate a "reach-in search" is approved.

9

In contrast, the cases of *Gonzalez v. Schnectady* 728 F.3d 149 (2nd Cir. 2013) *and Schmerber v. California*, 384 U.S. 757 (1966), hold otherwise. They mandate that a search warrant be obtained when an object is visually detected or other information provides probable cause that an object is hidden inside the arrestee's body. In the instant case there was no search warrant.Consequently, the intrusive digitally penetrating search of herr vagina was unconstitutional.

> If an object is visually detected or other information provides probable cause that an object is hidden inside the arrestee's body, *Schmerber* dictates that a warrant be obtained before conducting a body cavity search unless an emergency situation exists. … the removal of an object protruding from a body cavity, regardless of whether any insertion into the body cavity is necessary, is subject to the *Schmerber* rule and cannot be accomplished without a warrant unless exigent circumstances reasonably prevent the police from seeking prior judicial authorization.

*Gonzalez* at 159-160 (Footnote omitted)

For the reasons stated, Counts 4, 5 and 7 against Garcia should NOT be dismissed.

**GARY KOLLIN, P.A.**
1856 N. Nob Hill Road, Suite 140
Fort Lauderdale, Florida 33324
Telephone: 954/723-9999
Facsimile: 954/791-6565
Garykollin@garykollinlaw.com
Pleadings@garykollinlaw.com

By:     s/ Gary Kollin
Fla. Bar No. 282431

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that this motion with attached proposed amended complaint was filed via CM/ECF on February 20, 2024.

s/Gary Kollin