United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Jane Doe, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| City of Miami, Florida, a municipal corporation, Johanna Garcia, individually, Shrieff Swan, individually, and Ruben Gonzalez, individually, Defendants. | ) Civil Action No. 23-23712-Civ-Scola |

**Order Granting in Part and Denying in Part Defendants' Motion to Dismiss**

This cause comes before the Court on the Defendants' joint motion to dismiss. (Mot., ECF No. 39.) The Plaintiff responded opposing the motion (Resp., ECF No. 46), and the Defendants filed a reply. (Reply, ECF No. 53.) Having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court **grants in part and denies in part** Defendants' motion to dismiss. (**Mot., ECF No. 39**.)

1. **Background**[1]

"Trust me. I went in. I went in. Nothing. Like in, in. Twice." (Am. Compl. ¶59, ECF No. 30.) This case arises from a strip search and body cavity search of the Plaintiff by City of Miami Police Officer Johanna Garcia. On October 25, 2019, Plaintiff was sitting in front of an apartment building when Officer Shrieff Swan approached her. (Am. Compl. ¶¶12, 13, ECF No. 30.) Upon seeing the officer, Plaintiff dropped a bag of marijuana and stepped on it. (*Id.* ¶14.) Officer Swan asked what was under her foot, and Plaintiff gave him the bag. (*Id.* ¶15.)

Officer Ruben Gonzalez arrived and told Plaintiff she was under arrest. (*Id.* ¶16.) The officers looked in Plaintiff's fanny pack and under her wig for any contraband. (*Id.* ¶¶18, 20.) After, they asked if she had anything else on her and informed her that she would be searched. (*Id.* ¶21.) The Plaintiff then entered the building, and the officers commanded her to exit. (*Id.* ¶¶22, 23.) Officer Gonzalez entered the apartment, handcuffed the Plaintiff, and placed her in the back of a patrol car. (*Id.* ¶¶24, 25, 26.) According to Officers Swan

---

[1] This background is based on the allegations in the Plaintiff's amended complaint. For the purposes of evaluating the Defendants' motion, the Court accepts the Plaintiff's factual allegations as true and construes the allegations in the light most favorable to the Plaintiff per Federal Rule of Civil Procedure 12(b)(6).

and Gonzalez, it appeared to them that the Plaintiff was concealing something under her clothing. (*Id.* ¶¶26-29, 37.) Officer Gonzalez did not see the Plaintiff drop anything or put anything in her clothing but saw Plaintiff "grab her jumper near her buttocks" and saw her "make a gesture." (*Id.* ¶¶27, 28.) Similarly, Officer Swan did not see the Plaintiff put anything into her clothing or drop anything, but "it appeared to him she was sticking something near the leg of her jumper." (*Id.* ¶29.)

Without obtaining written authorization from a supervising officer, Officer Gonzalez requested a female officer come search the Plaintiff. (*Id.* ¶¶33, 34.) Officer Johanna Garcia arrived. Officer Garcia put on gloves that she retrieved from an open container in her trunk and escorted Plaintiff to the alley beside the apartment building. (*Id.* ¶38.) According to the Plaintiff, the alley was full of "dirt, debris, bugs, vermin, and garbage." (*Id.* ¶42.)

Officer Garcia told Plaintiff "I'm going to search you, okay." (*Id.* ¶45.) Officer Garcia then searched through Plaintiff's breast area and the legs of Plaintiff's clothing. (*Id.* ¶46.) Officer Garcia asked if the Plaintiff was wearing underwear, and Plaintiff replied that she was not. (*Id.* ¶47.) Officer Garcia then searched Plaintiff's buttocks area and told her "I'm really sorry if this makes you feel uncomfortable, but I have to, I have to search you unless you want to tell me something." (*Id.* ¶48.) Officer Garcia then searched the Plaintiff's "external vaginal area", followed by the "interior" of Plaintiff's vagina, using her fingers "to digitally penetrate [Plaintiff's] vagina with her unsanitary gloves." (*Id.* ¶49.) Officer Garcia's body-worn camera recorded the search. (*Id.*)

The Plaintiff began to cry and protest the search, asking Officer Garcia why the search was being conducted outside. (*Id.* ¶51.) The Plaintiff also said: "I never had anyone search me like that on my c__chie and stuff!" (*Id.*) Officer Garcia responded: "Yeah, but if the officers saw you put something somewhere, I have to search." (*Id.* ¶52.)

Officer Garcia then informed the Plaintiff she was going to search one more time, "from the front again, I'm sorry", and apologized if it was uncomfortable. (*Id.* ¶53.) She then "digitally penetrat[ed] her vagina again." (*Id.*) After the search, Officer Garcia brought the Plaintiff back to the other officers. (*Id.* ¶57.) Officer Gonzalez asked if the search produced any contraband, and Officer Garcia shook her head no. (*Id.* ¶58.) She told him: "Trust me. I went in. I went in. Nothing. Like in, in. Twice." (*Id.* ¶ 59.)

None of the officers reported the body cavity search, and when an internal affairs investigation commenced, Officer Garcia denied under oath that she put her fingers in Plaintiff's vagina. (*Id.* ¶¶62, 63.) Plaintiff argues that the search was done without her consent under unsanitary conditions; she also

argues that the officers did not have sufficient reasonable suspicion to justify the "intrusive digital penetration." (*Id.* ¶¶66, 67, 70, 71.)

Plaintiff sued the City of Miami and the three officers. The amended complaint alleges three counts against the City: a battery claim (count one), a "section 901.211" claim (count two), and a negligent infliction of emotional distress claim (count three). (Am. Compl., ECF No. 30.) The Plaintiff dismissed count three, leaving only the first two claims against the City. (ECF No. 47.)

The amended complaint alleges four counts against the Individual Defendants: intentional infliction of emotional distress (count four), "section 1983 illegal search" (count five), battery (count six), and a "section 901.211" claim (count seven). (Am. Compl., ECF No. 30.) The Plaintiff dismissed counts four, five and seven against Defendants Gonzalez and Swan. (ECF No. 48.) Because those were the only claims against those Defendants, the Plaintiff alleges no claims against Gonzalez and Swan. Accordingly, counts four through seven are only against Defendant Garcia.

The City moved to dismiss on two bases:[2] first, that the City is entitled to sovereign immunity because the facts as alleged illustrate that Officer Garcia acted "maliciously", with "bad faith" or in a manner exhibiting "wanton and willful disregard of [Plaintiff's] human rights, safety or property"; and second, that Florida Statute § 901.211 does not articulate an independent cause of action. The Individual Defendants, now just Officer Garcia, moved to dismiss, arguing that the Plaintiff's use of the terms "strip search" and "cavity search" interchangeably does not provide fair notice of the alleged constitutional violation.[3]

## 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate

---

[2] The City also moved to dismiss the negligent infliction of emotional distress claim, but the Plaintiff subsequently dismissed that claim. (ECF No. 47.)

[3] The Individual Defendants also moved to dismiss based on a failure to state a claim against Defendants Swan and Gonzalez, but the Plaintiff subsequently dismissed all claims against those Defendants. (ECF No. 48.)

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Analysis

#### A. The City is not entitled to sovereign immunity as a matter of law.

The City argues it is entitled to sovereign immunity because the facts, as alleged by the Plaintiff, "would require this Court to find that the Officer acted 'maliciously,' with 'bad faith,' or in a manner exhibiting 'wanton and willful disregard of [Plaintiff's] human rights, safety, or property.'" (Mot. 3, ECF No. 39.) Under the doctrine of sovereign immunity, the State and its subsidiaries—including municipalities—are generally immune from liability. *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001) (citing Fla. Const., Art. X, § 13). Florida waived sovereign immunity in tort actions via the enactment of Florida Statute § 768.28. The waiver applies to both negligent and intentional torts. *Blue v. Miami-Dade Cnty.*, No. 10-23599-CIV, 2011 WL 2447699, at *2 (S.D. Fla. June 15, 2011) (Huck, J.). However, if conduct is committed in "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property," it does not fall within the statute's waiver of sovereign immunity. Fla. Stat. § 768.28(9); *see Ghandour v.*

*City of Miami*, No. 23-21970-CIV, 2024 WL 95391, at *3 (S.D. Fla. Jan. 9, 2024) (Altonaga, J.).

Generally, the question of bad faith or malicious purpose is reserved for a jury. *Martinez v. Miami-Dade Cnty.*, No. 12-23534-CIV, 2013 WL 1891290, at *2 (S.D. Fla. May 6, 2013) (Seitz, J.). However, Courts may consider dismissal based on sovereign immunity if the facts "can only be characterized as stating claims for acts done in bad faith or in a willful and wanton manner." *Gregory v. Miami-Dade Cnty.*, 86 F. Supp. 3d 1340, 1343 (S.D. Fla. 2015) (Graham, J.), *aff'd sub nom. Gregory v. Miami-Dade Cnty., Fla.*, 719 F. App'x 859 (11th Cir. 2017); *see also Blue*, 2011 WL 2447699, at *2. For example, express allegations that a defendant's actions were "malicious" suffice to warrant dismissal based on sovereign immunity. *Moore v. Miami-Dade Cnty.*, 502 F. Supp. 2d 1224, 1235 (S.D. Fla. 2007) (Gold, J.).

Plaintiff's claims against the City contain no express allegations that Officer Garcia's actions were malicious or in bad faith.[4] The City points to the following allegations to demonstrate that Officer Garcia's actions can only be construed as malicious, willful, wanton, and done in bad faith: (1) that Officer Garcia's search of Plaintiff with unsanitary gloves in an alleyway full of "dirt, debris, bugs, vermin, and garbage" was "invasive, unsanitary, and humiliating", (2) that officers "knew that conducting a strip search in public without a supervising officer's written authorization was in violation of law and the standard operating procedures of the Department" and was "completely improper", and (3) that "[t]he strip search and body cavity search conducted was demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, and signifying degradation." (*See* ECF No. 39.)

As a threshold matter, strip searches and cavity searches, by their very nature, can be invasive, humiliating, demeaning, dehumanizing, unpleasant, and terrifying. But both, under certain circumstances, may be allowed by law. The facts, as alleged by Plaintiff, do not support that Officer Garcia's actions can only be characterized as "malicious", done "in bad faith", or in a willful or wanton manner. In fact, Officer Garcia repeatedly apologized to the Plaintiff for the invasiveness of the search. (*See* Am. Compl. ¶48, ECF No. 30) ("I'm really sorry if this makes you feel uncomfortable, but I have to, I have to search you unless you want to tell me something."); (*Id.* ¶53) (Officer Garcia "said she's

---

[4] Plaintiff may plead claims against officers in their individual capacities and against a municipality in the alternative. *See* Fed. R. Civ. P. 8(a)(3); *Martinez*, 2013 WL 1891290, at *3. Here, the express allegations that the officers conduct was "in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights" are properly plead in the alternative against only the individual officers. (*See* ECF No. 30.)

sorry if it's uncomfortable," and said, "from the front again, I'm sorry."). She also repeated the words "I have to"—suggesting that the search was not done maliciously, but out of a sense of obligation. (*See id.* ¶48, 52) ("[I]f the officers saw you put something somewhere, I have to search.")

That the search did not comport with all Department protocols or that it was conducted in a dirty alley with unsanitary gloves do not, on their own, allow the Court to conclude that Officer Garcia's actions "can **only** be characterized as stating claims for acts done in bad faith or in a willful and wanton manner." *See Gregory*, 86 F. Supp. 3d at 1343 (emphasis added). Because strip searches and cavity searches are not inherently unlawful, Officer Garcia's actions do not rise to the level of egregiousness that would allow the Court to conclude she could have only acted in bad faith. *But cf Blue*, 2011 WL 2447699, at *2 (finding sovereign immunity as a matter of law when an officer kicked a five-year-old child in the mouth); *Gregory*, 86 F. Supp. 3d at 1343 (finding sovereign immunity as a matter of law when an officer shot a 16-year-old boy in the back multiple times when the boy posed no threat to the officer); *Ghandour*, 2024 WL 95391, at *3 (finding sovereign immunity as a matter of law when an officer shoved and body slammed an individual who was "respectful", "courteous", and "at no point disobeyed any orders or showed aggression or violence"). Accordingly, the Court finds the City is not entitled to sovereign immunity at this stage, and **denies** the motion to dismiss on that ground. (**ECF No. 39**.)

### B. Section 901.211 does not create an independent cause of action.

The Plaintiff alleges two claims under Fla. Stat. § 901.211: count two against the City and count seven against Officer Garcia. The statute governs strip searches and body cavity searches:

> (1) As used in this section, the term "strip search" means having an arrested person remove or arrange some or all of his or her clothing so as to permit a visual or manual inspection of the genitals; buttocks; anus; breasts, in the case of a female; or undergarments of such person.
> (2) No person arrested for a traffic, regulatory, or misdemeanor offense, except in a case which is violent in nature, which involves a weapon, or which involves a controlled substance, shall be strip searched unless:
> (a) There is probable cause to believe that the individual is concealing a weapon, a controlled substance, or stolen property; or
> (b) A judge at first appearance has found that the person arrested cannot be released either on recognizance or bond and therefore shall be incarcerated in the county jail.

> (3) Each strip search shall be performed by a person of the same gender as the arrested person and on premises where the search cannot be observed by persons not physically conducting or observing the search pursuant to this section. Any observer shall be of the same gender as the arrested person.
> (4) Any body cavity search must be performed under sanitary conditions.
> (5) No law enforcement officer shall order a strip search within the agency or facility without obtaining the written authorization of the supervising officer on duty.
> (6) Nothing in this section shall be construed as limiting any statutory or common-law right of any person for purposes of any civil action or injunctive relief.

Fla. Stat. § 901.211. The plain language of the statute does not reference the creation of an independent cause of action—only that nothing in the section "shall be construed as **limiting** any statutory or common-law right of any person for purposes of any civil action or injunctive relief." *Id.* § 901.211(6) (emphasis added).

The Plaintiff cites to *Welch v. Rice*, 636 So.2d 172 (Fla. 2nd DCA 1994), as its sole support for the proposition that the statute creates an independent cause of action. But although the Plaintiff in *Welch* filed a civil cause of action, and the cause of action *includes* a violation of Fla. Stat. § 901.211, the opinion does not state that the *basis* of the cause of action was the statute itself, rather than, for example, a constitutional violation.

Further, as Defendants point out, the Florida Supreme Court in *Jenkins v. State*, 978 So. 2d 116, 130 (Fla. 2008), subsequently held that "[s]ection 901.211 does not expressly list the exclusionary rule as a remedy and, therefore, we do not infer that this remedy is available for violations of the statute." Because the statute similarly does not expressly list a cause of action for damages as a remedy available for violations of the statute, the Court concludes that the statute itself does not state an independent cause of action. Accordingly, Defendants' motion to dismiss counts two and seven is **granted**. (**ECF No. 39.**)

### C. The allegations in the amended complaint suffice to put Defendant Garcia on notice about the alleged constitutional violation.

The Plaintiff dismissed all claims against Defendants Swan and Gonzalez, thus rendering moot much of the Individual Defendants' portion of the motion to dismiss. The surviving argument alleges that the Plaintiff used the terms strip search and cavity search interchangeably, thereby failing to put Defendant Garcia on notice of the alleged constitutional violation. (ECF No. 39);

(ECF No. 53) ("Plaintiff does not make sufficiently clear, was she strip searched, subjected to a body cavity search, or both.") The Court disagrees. Plaintiff clearly and repeatedly alleges that she was subjected to both a strip search and a cavity search. (*E.g.*, Am. Compl. ¶44, ECF No. 30) ("…to conduct a strip search of her which included a body cavity search"); (*Id.* ¶50) ("…began the strip and body cavity search"); (*Id.* ¶98) ("The strip search and body cavity search… were done without any legal right and authority, and was unreasonable and violated [Plaintiff's] constitutional rights to be free from unreasonable searches pursuant to the Fourth and Fourteenth Amendments.")

Defendant Garcia argues that she did not perform a strip search because "plaintiff's clothes were not moved or removed for visual inspection." Further, the Defendant asserts that strip searches and body cavity searches are distinct, with unique harms: "bodily privacy/modesty and offensive touching." (*Id.* at 10.) In support, the Defendant points to Fla. Stat. § 901.211(1), noting that the statute defines strip search, but does not define body cavity search. However, the language of the statute undermines the Defendant's argument, illustrating that the two types of searches overlap:

> [T]he term "strip search" means having an arrested person remove **or arrange** some or all of his or her clothing so as to permit a visual **or manual** inspection of the genitals; buttocks; anus; breasts, in the case of a female; or undergarments of such person.

Fla. Stat. § 901.211(1). Per the statute, a strip search need not include the removal of clothing; a strip search can occur when one **arranges** the clothing to permit a **manual** inspection of the genitals, buttocks, anus, breasts, or undergarments. *Id.* Thus, the Plaintiff's description of the search as a strip search with a body cavity search is both accurate under the statute and sufficiently detailed to put the Defendant on notice about the type of constitutional violation alleged. Defendant Garcia's motion to dismiss is **denied.** (**Mot., ECF No. 39**.)

### 4. Conclusion

For the reasons set forth above, the Court **grants in part and denies in part** the motion to dismiss. (**Mot., ECF No. 39**.) The Court dismisses counts two and seven. Count one is the sole surviving claim against the City, and counts four through six remain against Defendant Garcia. The Plaintiff has dismissed all claims against Defendants Swan and Gonzalez. (ECF No. 48.) Accordingly, Defendants Swan and Gonzalez are hereby **dismissed** from this case.

**Done and ordered** in Miami, Florida on June 18, 2024.

_____
Robert N. Scola, Jr.
United States District Judge